IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHAWVEZ NELSON,
a/k/a SHAVEZ HOLDEN[1]

v.

MICHAEL OVERMYER, ET AL.[2]

: CIVIL ACTION
:
: NO. 10-4691
:

**MEMORANDUM**

**SURRICK, J.**  NOVEMBER 19, 2018

Presently before the Court are Petitioner Shawvez Nelson's *pro se*[3] Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (ECF No. 1), the Report and Recommendations of Magistrate Judge Wells recommending denial of the Petition (R&R, ECF No. 15), and Petitioner's *pro se* Objections (ECF No. 17) and Supplemental Objections (ECF Nos. 18, 21) to the R&R. For the following reasons, Petitioner's objections are overruled, the R&R is approved and adopted as modified herein, and the Petition is dismissed without an evidentiary hearing.

---

[1] Petitioner is identified as Shavez Holden in the state court proceedings underlying this action.

[2] At the time Nelson filed his *pro se* Petition, he was incarcerated at the State Correctional Institution ("SCI") at Houtzdale, and he properly named the superintendent of that institution, Steven R. Glunt, as the respondent in this action. *See* Rule 2(a) of the Rules Governing Section 2254 Cases (requiring the state officer with current custody to be named as the respondent). However, Petitioner's subsequent filings and the Pennsylvania Department of Corrections website reflect that he is currently housed at SCI-Forest in Marienville, Pennsylvania. *See* http://inmatelocator.cor.pa.gov/#/ (last visited Oct. 29, 2018). Accordingly, we have amended the caption to name Michael Overmyer, Superintendent of SCI-Forest, as the primary respondent. *See* https://www.cor.pa.gov/Facilities/StatePrisons/Pages/Forest.aspx (last visited Oct. 29, 2018).

[3] We subject *pro se* pleadings to a liberal review. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

# I. FACTUAL AND PROCEDURAL BACKGROUND

The Pennsylvania Superior Court summarized the facts leading to Petitioner's conviction as follows:

> [Petitioner] beat Leonard Campbell (the victim) with his bare hands. The victim sustained serious injuries in the beating, including brain injuries, from which he died three months later. [Petitioner] was tried before a jury in December of 1999 and convicted of third degree murder. On May 1, 2000, the trial court sentenced him to twenty to forty years' imprisonment in a state correctional institution.

(*Commw. v. Holden*, No. 3367 EDA 2002, slip op. 1 (Pa. Super. Ct. Apr. 15, 2004) ("Direct App. Op."), Answ. to Pet. Ex. A, ECF No. 10-1.)[4]

Petitioner pursued a direct appeal and asserted that: (1) the evidence was insufficient to sustain the murder conviction because there was no evidence of malice; (2) the trial court erred in giving an incomplete jury instruction on the justification defense and in failing to instruct the jury on involuntary manslaughter; and (3) the Commonwealth's closing statement constituted prosecutorial misconduct. (*Id.* at 2.) The Superior Court rejected each of these arguments and affirmed the judgment of sentence. (*Id.* at 12.) With regard to the issue of malice, the Superior Court recounted the eyewitness testimony and medical evidence presented at trial and concluded:

> The Commonwealth presented sufficient evidence to establish that [Petitioner] continued to mercilessly beat [the victim] about the face and head even after the victim had fallen to the ground and was rendered defenseless. Even after bystanders restrained [Petitioner] on two occasions, [Petitioner] broke free each time and resumed beating the victim with his hands and feet. The evidence also established that the victim was smaller in weight and stature than [Petitioner]. Based on the evidence presented by the Commonwealth, the jury could infer that [Petitioner] acted with malice. In all, the evidence was sufficient to support [Petitioner's] conviction of third degree murder.

(*Id.* at 2-6 (citations omitted).)

---

[4] Petitioner was tried in the Philadelphia County Court of Common Pleas.

Based on the evidence, the Superior Court also found no error in the trial court's refusal to give an involuntary manslaughter charge. The court reasoned:

> The evidence, even when viewed in the light most favorable to [Petitioner], does not support an involuntary manslaughter charge. Although [Petitioner] and the victim began fist fighting each other, once the victim was on the ground, motionless and unconscious, [Petitioner] continued to brutally beat him by, *inter alia*, punching and stomping on his head. Such acts do not tend to establish that the victim's death was an accident caused by [Petitioner's] extreme carelessness. [Petitioner's] argument on this issue is meritless.

(Direct App. Op. 8-10 (citing *Commw. v. Soltis*, 687 A.2d 1139, 1141 (Pa. Super. Ct. 1996) "To be entitled to an involuntary manslaughter charge, [Petitioner] must point to some evidence that tends to show that he acted recklessly or with gross negligence in causing [the victim's] death.")).) On September 10, 2004, the Pennsylvania Supreme Court denied *allocatur*. See *Commw. v. Holden*, 860 A.2d 489 (Pa. 2004) (Table). Petitioner did not seek *certiorari* to the United States Supreme Court.

On or about June 28, 2005, Petitioner filed a *pro se* Petition for relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541, *et seq*.[5] (PCRA Remand Pet., Pet. Mem. Ex. H.) Petitioner's *pro se* PCRA submissions principally asserted that trial counsel was ineffective for failing to interview, investigate, and call witnesses whose testimony allegedly would have contradicted the Commonwealth's witnesses and supported the defense theory. The court appointed counsel, who filed an Amended PCRA Petition on February 15, 2007. (Answ. to Pet. 2, ECF No. 10.) In the Amended PCRA Petition, counsel asserted an ineffective assistance of trial counsel ("IATC") claim based on counsel's

---

[5] The state court record and docket reflect that on or about August 18, 2005, Petitioner also filed a *pro se* Amended Petition Seeking Collateral Relief and Memorandum in Support of Petition for Post Conviction Relief.

failure to call three witnesses — Rolando "Boo" Hall, Dorian "Nate" Miller, and Edward Wallace — whose affidavits indicated that the victim had pepper sprayed Petitioner's face at the beginning of their confrontation. (PCRA Remand Pet. 2-3.) The Amended PCRA Petition argued that this evidence would have established sufficient provocation to support the lesser offense of voluntary manslaughter. (*Id.* at 3-4.) The Amended PCRA application was dismissed on August 23, 2007. (*Id.* at 4.)

Petitioner appealed the PCRA dismissal, and his counsel filed an appellate brief on Petitioner's behalf. (Pet. for Remand 4.) While the appeal was pending, Petitioner filed *pro se* submissions in the Superior Court asserting that his PCRA counsel was ineffective and seeking to represent himself in the PCRA appeal. (*Commw. v. Holden*, No. 2477 EDA 2007, slip op. 2 (Pa. Super. Ct. Sept. 21, 2009) ("PCRA App. Op."), Answ. to Pet. Ex. B, ECF No. 10-1.) Petitioner's *pro se* submissions claimed that PCRA counsel was ineffective for failing to pursue all the IATC theories that Petitioner wanted related to trial counsel's failure to investigate, interview, and call witnesses whose testimony Petitioner believed would undermine the testimony of prosecution witnesses.[6] (PCRA App. Op. 5-6.) The Superior Court remanded the

---

[6] In connection with these *pro se* submissions, PCRA counsel filed a Petition for Remand addressing Petitioner's allegations of ineffectiveness and explaining why counsel believed they lacked merit. (*See* PCRA Remand Pet.) In the Petition for Remand, PCRA counsel stated, *inter alia*:

> [Petitioner alleges] that [PCRA] counsel was ineffective for failing to argue on appeal that Hall, Wallace and Miller would have also testified that [Petitioner] did not return to the attack after twice being pulled away by bystanders, nor did he break free from anyone and return to continue the altercation. [Petitioner] alleges that this testimony would have contradicted the Commonwealth's evidence and served to negate the element of malice necessary to sustain a conviction for third degree murder. . . .
>
> Contrary to [Petitioner's] allegations, none of his proposed witnesses ever stated in their respective affidavits that they did not observe bystanders attempt to restrain

4

case for a *Grazier*[7] hearing, at which the lower court determined that Petitioner's waiver of counsel was knowing, voluntary, and intelligent. (*Id.*) The Superior Court then allowed Petitioner's counsel to withdraw, struck the appellate brief that counsel had filed, and permitted Petitioner to proceed *pro se*. (*Id.*)

Thereafter, Petitioner filed a *pro se* brief challenging the dismissal of his PCRA Petition on the grounds that: (1) the PCRA court erred in denying the Petition where trial counsel was ineffective for failing to investigate, interview, or call helpful witnesses, (*id.* at 2-3); (2) PCRA counsel was ineffective for failing to attach the affidavits of Len Coppick and John Stanley to contradict the prosecution's evidence, (*id.* at 4); and (3) PCRA counsel was ineffective for not

---

> [Petitioner] during the altercation. Indeed, none of the proposed witnesses ever addressed this specific issue in their affidavits. It cannot be inferred that they would have testified that attempts to pull [Petitioner] away from the victim never happened simply because they did not mention the subject in their statements. Accordingly, counsel was not in a position to argue before the PCRA court or on appeal before this Court that these witnesses would have testified that [Petitioner] did not return to continue to beat the victim after twice being physically restrained.
>
> Moreover, even had these witnesses alleged in their affidavits that they had not observed [Petitioner] break free in order to continue the fight, this testimony would not have served to negate the element of malice in light of the rest of their proposed testimony and the other evidence introduced at trial. . . . Additionally, the medical evidence showed that the victim died from a brutal beating; the victim sustained head lacerations, swelling and bleeding around the eyes, a broken nose, broken jaw, broken skull, broken teeth, bleeding in the brain and injuries to the brain stem. Finally, the victim's mother testified at trial that she heard [Petitioner] say that he tried to kill the victim. Thus, the issue that the testimony of Hall, Miller and Wallace would have negated the element of malice in this case is without arguable merit.

(Pet. for Remand 4-6.)

[7] A *Grazier* hearing refers to the requirement under state law that "[w]hen a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one." *Commw. v. Grazier*, 713 A.2d 81, 82 (Pa. 1998).

arguing that trial counsel was ineffective in failing to call the above-referenced witnesses to challenge the prosecution evidence (*id.* at 5-6).

Addressing these issues, the Superior Court first found Petitioner's *pro se* IATC claim to be waived because it was not raised in the PCRA court. (*Id.* at 3.) The court noted that the counseled Amended PCRA Petition asserted an IATC claim "only with regard to [trial counsel's] failure to call witnesses to establish that the victim sprayed [Petitioner] in the face with mace, therefore provoking the violent assault that followed." (*Id.*) The Amended Petition did not include Petitioner's *pro se* IATC theory based on the failure to call witnesses to contradict the testimony of prosecution witnesses. Noting that "[i]ssues not raised in the PCRA court . . . cannot be raised for the first time on appeal," the Superior Court found Petitioner's *pro se* IATC theory to be waived. (*Id.* (citing *Commw. v. Jones*, 815 A.2d 598, 607 (Pa. 2002)).)

The Superior Court then addressed the merits of Petitioner's claims of PCRA counsel ineffectiveness.[8] Regarding the Coppick and Stanley affidavits, the court held that their omission from the Amended PCRA Petition did not prejudice Petitioner because they were cumulative and contained no additional information beyond that contained in the three affidavits that were included with the Amended PCRA Petition. (*Id.* at 4-5 (citing *Commw. v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. Ct. 2004) (setting forth elements necessary to overcome presumption that counsel was effective)).) Having found that Petitioner was not prejudiced by

---

[8] In considering the merits of these claims, the Superior Court noted that "the filing of [Petitioner's] *pro se* brief on appeal was the first opportunity for him to challenge PCRA counsel's ineffectiveness." (PCRA App. Op. 3-4 (citing *Commw. v. Lauro*, 819 A.2d 100, 108 (Pa. Super. Ct. 2003) ("[C]laims of PCRA counsel's ineffectiveness must be raised at the first opportunity at which the defendant is represented by counsel other than the attorney whose effectiveness is challenged.")).)

PCRA counsel's alleged error, the court did not address the other elements necessary to establish ineffective assistance of counsel.[9]

Regarding Petitioner's claim that PCRA counsel was ineffective in handling Petitioner's IATC claim, the Superior Court found the underlying claim to be meritless. (*Id.* at 6.) The court explained:

> [Petitioner] bases this claim on the five affidavits discussed above. We have reviewed these affidavits, and none contains testimony that would contradict the evidence [Petitioner] seeks to undermine. Accordingly, we conclude that there is no merit to the underlying claim, and therefore we will not find PCRA counsel ineffective for not pursuing the same.

(*Id.* (citing *Commw. v. Descar*, 798 A.2d 758, 759 (Pa. Super. Ct. 2002) (holding that counsel will not be deemed ineffective for failing to pursue an issue without merit)).)[10] The Superior Court affirmed the dismissal of Petitioner's Amended PCRA Petition. (PCRA App. Op. 6.) The Pennsylvania Supreme Court denied *allocator*, *Commw. v. Holden*, 607 Pa. 701 (2010), and Petitioner did not seek *certiorari* to the United States Supreme Court.

Petitioner subsequently filed the instant habeas Petition asserting that:

(1) trial counsel was ineffective for failing to investigate, interview, and call favorable witnesses ("Claim 1"), (Pet. ¶ 12(A));

(2) the trial court erred by failing to instruct the jury on involuntary manslaughter ("Claim 2"), (*Id.* ¶ 12(B));

---

[9] The other elements a claimant must establish under Pennsylvania law are: "(1) [that] the underlying claim is of arguable merit; [and] (2) that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate the [claimant's] interest." *O'Bidos*, 849 A.2d at 249. Pennsylvania's ineffective assistance of counsel standard is not contrary to the federal standard under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Lane v. Bickel*, No. 12-2828, 2013 WL 3989067, at *10 (E.D. Pa. Aug. 5, 2013) (citing *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000)).

[10] Federal law also recognizes that "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Werts*, 228 F.3d at 203.

7

(3) the prosecutor committed misconduct during closing argument ("Claim 3"), (*Id.* ¶ 12(C)); and

(4) the evidence was insufficient to sustain his third degree murder conviction because there was no proof of malice ("Claim 4"), (*Id.* ¶ 12(D)).

The Petition was referred to Magistrate Judge Wells, who issued a R&R recommending that all of Petitioner's habeas claims be dismissed or denied without an evidentiary hearing. (R&R 1.) Specifically, the R&R determined that Claims 1 and 2 were procedurally defaulted and could not be considered on the merits and Claims 3 and 4 were exhausted but lacked merit. (R&R 5-6, 9-13.) With regard to Claim 1, the R&R noted that Petitioner had raised his IATC claim during his *pro se* PCRA appeal, but the Superior Court had deemed it waived because it had not been presented to the PCRA court. (R&R 5.) The R&R concluded that the claim was procedurally defaulted and, under the prevailing law at the time, Petitioner had not alleged cause or prejudice to excuse the default. (*Id.* at 4-6 (citing *Coleman v. Thompson*, 501 U.S. 722, 753-754 (1991)).) Subsequently, in *Martinez v. Ryan*, 566 U.S. 1 (2012), discussed *infra*, the United States Supreme Court recognized a "narrow exception" to the general rule, in *Coleman*, that "attorney[] errors in [a collateral] proceeding do not establish cause for a procedural default."[11] *Martinez*, 566 U.S. at 8-9.

Petitioner filed timely Objections to Magistrate Judge Wells' recommendation that Claim 1 be dismissed as procedurally defaulted without an evidentiary hearing and without issuance of a Certificate of Appealability ("COA"). After the Supreme Court issued its opinion in *Martinez*, Petitioner filed two successive supplemental Objections arguing that his procedural default of

---

[11] As is detailed herein, we approve and adopt the R&R subject only to our modification to address *Martinez*, which was decided after issuance of the R&R.

Claim 1 should be excused based on the allegedly ineffective assistance of PCRA counsel.[12] Respondents did not file a response to Petitioner's Objections or supplemental Objections.

## II. LEGAL STANDARD

### A. Review of Report and Recommendation

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a *de novo* review of those portions of the report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1); *see also Goney v. Clark*, 749 F.2d 5, 6 (3d Cir. 1984) (explaining that *de novo* review is not required if objections are not specific). "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x. 142, 148 (3d Cir. 2016). With regard to the portions of the R&R to which no objections are made, "the [district] court should, as a matter of good practice, 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Latorre v. Wetzel*, No. 15-280, 2016 WL 3014874, at *1 n.2 (E.D. Pa. May 26, 2016) (quoting Fed. R. Civ. P. 72(b), advisory committee notes). The district "court may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C).

### B. Habeas Review Under 28 U.S.C. § 2254

Any claim adjudicated by a state court is considered under the standard of review established by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This

---

[12] Petitioner's second supplemental Objections also requested that the case be remanded to the Magistrate Judge in light of *Martinez*, and that the caption be amended to update the name of the first Respondent.

standard provides that a federal district court cannot grant a writ of habeas corpus on a previously adjudicated claim unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s].

28 U.S.C. § 2254(d). Pursuant to this statute, the findings of fact made by state courts are presumed to be correct. The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For a state court's adjudication of a habeas claim to be considered "contrary to" clearly established federal law, the state court must "arrive[] at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or . . . decide[] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). In determining whether a state court's decision fits within this definition of "contrary," a habeas court should be mindful of the "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). As long as "neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent, the state court's legal determinations should stand. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (*per curiam*) (internal quotation marks omitted).

If the state court correctly identifies the governing precedent, its analysis is reviewed for an "unreasonable application" of the law. *Williams*, 529 U.S. at 406-08. In making the unreasonable application determination, the habeas court must ask whether the state court's application of the underlying Supreme Court precedent was objectively unreasonable. *Id.* at 409.

A habeas court cannot grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. For a habeas petitioner to obtain relief under § 2254(d)(2), he must demonstrate that the state court's factual determinations were "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockerell*, 537 U.S. 322, 340 (2003).

C. **Exhaustion and Procedural Default**

It is well-established that a petitioner must exhaust his state court remedies before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). In Pennsylvania, an inmate exhausts his state court remedies by fairly presenting his claims to the state trial court and then to either the Pennsylvania Superior Court or Supreme Court. *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004). "If a petitioner fairly presented his claim to the state court, but the state court declined to review the claim on the merits because of a failure to comply with a state procedural rule, then the claim is procedurally defaulted." *Gibson v. Beard*, 165 F. Supp. 3d 286, 297 (E.D. Pa. 2016) (citation omitted). "A habeas petition should therefore be denied if it raises claims that were procedurally defaulted in state court." *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015) (citation omitted). This rule yields, however, when "the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (citation and internal quotation marks omitted). The United States Supreme Court has stated that the "independent and adequate state ground doctrine" applies in cases "to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement.

In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. at 729-30 (citing *Wainwright v. Skyes*, 433 U.S. 72, 81 (1977)).

In addition, "[t]o show cause, a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." *Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001) (citing *Coleman*, 501 U.S. at 753). To satisfy the "fundamental miscarriage of justice" prong, the petitioner must offer new evidence to demonstrate "that he is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 323-24 (1995); *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

D.  **Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are evaluated under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy the first prong of the *Strickland* test, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The court must strive to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The court is further required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is [a petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

To satisfy the second *Strickland* prong, a petitioner must demonstrate that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. The petitioner must show that "there is a reasonable

probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. If a petitioner fails to satisfy either *Strickland* prong, his claim fails. *Id*. at 697. Counsel cannot be deemed ineffective solely for failing to present or pursue a meritless claim or objection. *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998); *Moore v. Deputy Comm'rs of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991).

Finally, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). This is because both standards are "highly deferential," and "when the two apply in tandem, review is doubly so." *Id*. (citation and quotations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

### III. DISCUSSION

Petitioner asserts specific objections to the R&R findings only as to Claim 1 (alleging an IATC claim for failure to investigate, interview, and call helpful witness). Petitioner's Objections and supplemental Objections do not refer to or challenge the recommended dismissal of Claim 2 as procedurally defaulted or the recommended denial of Claims 3 and 4 as unmeritorious. Based on our independent review of the record and relevant case law, we see no clear error in the R&R findings as to Claims 2, 3, and 4. Accordingly, we will approve and adopt the R&R's recommendations with regard to those claims.

Turning to Claim 1, Petitioner's initial Objections challenged: (1) the R&R finding that Claim 1 is procedurally defaulted; (2) the recommendation, as to Claim 1, that no evidentiary hearing be held; (3) the application of *Coleman* to bar federal review of Claim 1; (4) the finding

13

that Petitioner failed to allege cause and prejudice for his procedural default of Claim 1; and (5) the recommendation, as to Claim 1, that a COA should not issue. Petitioner's supplemental Objections argue that, under *Martinez*, the ineffective assistance of his PCRA counsel excuses the procedural default of Claim 1. For the reasons that follow, we find that Petitioner's procedural default of Claim 1 is not excused under *Martinez* and, even if it were, his underlying IATC claim fails under *Strickland*.

### A. Petitioner's Procedural Default of Claim 1 Is Not Excused Under *Martinez*

Under the "narrow exception" recognized in *Martinez*, a "procedural default will not bar a federal habeas court from hearing a substantial claim of [IATC] if, in the initial-review collateral proceeding, . . . counsel in that proceeding was ineffective." *Preston v. Graterford SCI*, 902 F.3d 365, 376 (3d Cir. 2018) (citing *Martinez*, 566 U.S. at 17.)) The *Martinez* exception is only available to a prisoner who can show: (1) that PCRA counsel's performance was deficient under *Strickland*, *i.e.*, that counsel's "performance fell below an objective standard of reasonableness"; and (2) that the "underlying [IATC] claim has some merit." *Workman v. Superintendent Albion SCI*, ___ F.3d ___, No. 16-1969, 2018 WL 5987138, at *7 (3d Cir. Nov. 15, 2018). In order to satisfy the first *Martinez* requirement, Petitioner "must demonstrate that an error by PCRA counsel amounts to *constitutionally ineffective* assistance of counsel." *Olmedo-Serrano v. Sec'y Pa. Dep't of Corr.*, 684 F. App'x 260, 264 (3d Cir. 2017) (emphasis in original) (internal quotation and citation omitted). "To demonstrate that [the underlying] claim has some merit, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further.'"[13] *Workman*, 2018 WL 5987138, at *4 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).)

Applying the foregoing standard to the procedural default of Claim 1, Petitioner has failed to show that PCRA counsel's performance was deficient. Petitioner essentially argues that PCRA counsel was ineffective in his decision to assert an IATC claim only with respect to the three witness affidavits that indicated the victim had provoked Petitioner by spraying pepper spray in his face. (Pet. Mem. 10, 17-19.) According to Petitioner, PCRA counsel should have relied upon all five of the witness affidavits Petitioner identifies and should also have argued that trial counsel was ineffective in failing to use those witnesses to undermine the prosecution evidence of malice and intent and to support a theory of self-defense. (*Id.* at 17-19.)

We note that the Superior Court considered Petitioner's claims of PCRA counsel ineffectiveness on the merits and rejected both. As set forth above, the Superior Court found that PCRA counsel's alleged error in omitting the Coppick and Stanley affidavits did not prejudice Petitioner because those affidavits were cumulative and duplicative of the other affidavits offered by PCRA counsel. The Superior Court further determined that the five proffered affidavits did not contain testimony that would have contradicted the prosecution evidence and, thus, PCRA counsel was not ineffective for declining to pursue an IATC claim that the Superior Court found to be meritless. The Superior Court's adjudication of these issues was not contrary to clearly established federal law. *See Werts*, 228 F.3d at 203 ("Counsel cannot be deemed ineffective for failing to raise a meritless claim."); *Strickland,* 466 U.S. at 692 ("[A]ny deficiencies in counsel's

---

[13] The requirement that the underlying IATC claim be "substantial" is different from, and less exacting than, the "prejudice" prong applied on the merits under *Strickland*, "which 'requires [a] showing that counsel's errors were so serious as to deprive the defendant of a fair trial.'" *Workman*, 2018 WL 5987138, at *4-5 (quoting *Strickland*, 466 U.S. at 687).

15

performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."); *see also Collins v. Sec'y of Pa. Dept. of Corr.*, 742 F.3d 528, 545 (3d Cir. 2014) (holding that deference under AEDPA "applies to any claim that has been adjudicated on the merits in any state court proceeding").

Moreover, in our view, the Superior Court's factual determinations were not objectively unreasonable. *See Miller-El*, 537 U.S. at 340. In assessing PCRA counsel's performance—and the merit of the underlying IATC claim—the Superior Court was required to apply a "highly deferential" standard under which the court considers "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect defendant's interests." *Commw. v. Dunbar*, 470 A.2d 74, 77 (Pa. 1983); *see also Olmedo-Serrano*, 684 F. App'x at 265 ("'At all points, judicial scrutiny of counsel's performance must be highly deferential.'" (quoting *Wong v. Belmontes*, 558 U.S. 15, 17 (2009) (*per curiam*))). In his Petition for Remand, PCRA counsel explained, *inter alia*, that the putative testimony contained in the affidavits "would not have served to negate the element of malice in light of the rest of [the witnesses'] proposed testimony and the other evidence introduced at trial." (Pet. for Remand 5.) Based on its own review of the five affidavits, the Superior Court determined that PCRA counsel was not ineffective. In our view, this was not an unreasonable application of federal law. Because PCRA counsel's performance was not deficient under *Strickland*, Petitioner cannot satisfy the first *Martinez* requirement necessary to excuse the procedural default of Claim 1. In lieu of separately analyzing the substantiality of Claim 1 under *Martinez* prong two, we will address the merits of Petitioner's IATC claim under the more stringent *Strickland* standard.

### B. Petitioner's Underlying IATC Claim Fails Under *Strickland*

Even if Petitioner's procedural default were excused under *Martinez*, he cannot establish that his trial counsel was ineffective under either prong of *Strickland*. Based upon our independent review of the record, including the affidavits, trial testimony, and Petitioner's *pro se* submissions, trial counsel's failure to call the proffered witnesses did not constitute ineffective assistance. First, and contrary to Petitioner's arguments, the proffered testimony would not have contradicted, or meaningfully undermined, the abundant prosecution evidence of malice and intent.

Prosecution witness Earline Byard testified, *inter alia*, that after the victim was on the ground, Petitioner repeatedly hit the victim, knocked him back down when he tried to get up, and kicked and stomped him in the face and head. (12/8/1999 Trial N.T. 49, 51.) Byard testified that after breaking away twice from bystanders attempting to restrain him, Petitioner jumped up and came down on the victim's face with his feet, then picked up a bicycle and threw it down on the motionless victim. (*Id.* at 61-64.) She further testified that even before bystanders tried to intervene, the victim was "done. . . . he was beaten. . . . He had blood coming out his ears and bloodclots coming out his ears and — and blood clumps out his eyes. I mean his nose. . . . He was not moving at all."[14] (*Id.* at 55-56.) The victim's mother testified that on the night of the fight, as she was rushing to the scene, she passed Petitioner on the street and heard him say to the man he was with: "I tried to kill the MF'er." (*Id.* at 105.) The first police officer on the scene testified that the victim "was bleeding profusely from the head, face, and his ears. He appeared

---

[14] Byard also testified that on three occasions after the incident, the last time shortly before trial, Petitioner contacted her and asked her "to say that [she] saw somebody else hit . . . [the victim]." (12/8/1999 Trial N.T. 69-70.)

17

to be lifeless. . . . To me it appeared that maybe he was hit by a car. He was mangled pretty bad." (*Id.* at 111.) He further testified that people in the crowd that had gathered did not initially realize who the victim was because his injuries rendered him "unrecognizable." (*Id.* at 112.)

The pathologist who conducted the victim's autopsy testified that when the victim arrived at the emergency room, he had bleeding underneath his scalp and swelling and bleeding around his eyes, his nose was broken, his lower jaw was broken in three areas, a bone at the base of his skull was broken, he had blood and broken teeth in his mouth, and he had abrasions on his chest and abdomen. (*Id.* at 123.) She further testified that a CAT scan and MRI revealed bleeding under the membranes covering the victim's brain, blood in the ventricles of the brain, and injuries in the brain stem. (*Id.* at 124.) The victim never recovered from his injuries, which resulted in multiple complications and, ultimately, his death. (*Id.* at 124-25.)

The testimony proffered by Petitioner does not contradict the above-noted evidence. For example, Wallace's affidavit states, "I saw [Petitioner] kicking someone, who was holding his leg," and later states that "the guy [Petitioner] was fighting was unconscience [sic]." (Pet. Mem. Ex. A.) Hall's affidavit states that Petitioner was in the area "to make a drug sale to one [] of his customers" and, with regard to the fight, that Petitioner "came out on top and hit the deceased until he stopped fighting." (*Id.* Ex. B.) Miller states:

> Petitioner was throwing wild punches, but he hit the dude like [five] times. The dude fell on his knees, then [Petitioner] punched him leaning over. The dude was grabbing [Petitioner's] leg, and [Petitioner] was kicking him. [Petitioner's] homies, . . . pulled up while this was happening, they ran out of the car and ran over to [Petitioner]. By the time they got to [Petitioner], the dude he was fighting, was knocked out and bleeding.

(*Id.* Ex. C.) Coppick's and Stanley's statements also confirmed that Petitioner hit the victim several times and knocked him down, and that the victim did not get back up. (*Id.* Exs. D, E.) To the extent that some of Petitioner's witnesses claimed that "the incident was self-defense,"

18

that "Petitioner definitely didn't mean to kill [the victim]," and that "it was an accident," such opinion testimony would have been inadmissible. (*Id.* Exs. B, D, E.); *see*, Pa. R. Evid. 701 (limiting lay opinions to those "rationally based on the perception of the witness").

Considering the totality of the evidence, we cannot conclude that counsel's failure to call the proffered witnesses constituted ineffective assistance rather than a reasonable strategic decision.[15] *See United States v. Ciancaglini*, 945 F. Supp. 813, 823 (E.D. Pa. 1996) ("Attorneys are not required to call every witness suggested to them; their expertise leads them to choose only the witnesses likely to assist the case. . . . This is precisely the type of strategic decision which the Court in *Strickland* held to be protected from second-guessing." (internal citations omitted)); *see also Government of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1434 (3d Cir. 1996) (stating that witness selection is "among the non-fundamental decisions that counsel is entitled to make at trial," and federal courts generally "will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses" (internal quotation marks and citations omitted)). We also cannot conclude that the omission of Petitioner's witnesses prejudiced his defense. In view of all of the evidence, including the testimony of Byard, the victim's mother,

---

[15] We also note that when raising an IATC claim for failure to call a witness, a petitioner must establish that: "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial." *Commw. v. Sneed*, 45 A.3d 1096, 1109 (Pa. 2012); *see also Moore v. DiGuglielmo,* 489 F. App'x 618, 625 (3d Cir. 2012) ("The five requirements set forth by the Pennsylvania Supreme Court would necessarily need to be shown to prevail under *Strickland* on a claim of this nature.")

In this case, it is far from clear that Petitioner's witnesses were available to testify at the time of trial. All of Petitioner's witness affidavits were executed several years after the trial, and Petitioner has not presented any other evidence of their availability at the time of trial. Moreover, when trial counsel was asked on the first day of trial whether he had any written statements of potential witnesses for the defense, counsel responded: "Oh, I have none, Judge. The eye witnesses apparently have sprouted wings and will not appear today." (12/8/1999 Trial N.T. 18.)

the first officer on the scene, and the pathologist, Petitioner has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

IV. CONCLUSION

For the foregoing reasons, Petitioner's Objections to the R&R will be overruled, the R&R will be approved and adopted as modified herein to address *Martinez*, the Petition for Writ of Habeas Corpus will be dismissed without a hearing, and a certificate of appealability will not issue.[16] An appropriate order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.

---

[16] In order to obtain a certificate of appealability where a petition has been dismissed on the merits, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). There are no grounds on which reasonable jurists would disagree with our assessment. Therefore, we decline to issue a certificate of appealability.